# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LOUIS SCARANTINO, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>)<br>) |
| v. | ) CLASS ACTION<br>) |
| WEST CORPORATION, TOM BARKER, LEE ADREAN, DONALD CASEY JR., ANTHONY DINOVI, PAUL GARCIA, LAURA GRATTAN, JEANETTE HORAN, MICHAEL HUBER, DIANE OFFEREINS, GREGORY SLOMA, APOLLO GLOBAL MANAGEMENT, LLC, MOUNT OLYMPUS HOLDINGS, INC., and OLYMPUS MERGER SUB, INC., | ) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on May 9, 2017 (the "Proposed Transaction"), pursuant to West Corporation ("West" or the "Company") will be acquired by affiliates of certain funds managed by affiliates of Apollo Global Management, LLC, Mount Olympus Holdings, Inc. ("Parent") and Olympus Merger Sub, Inc. ("Merger Sub," and together with Apollo Global Management, LLC and Parent, "Apollo").

2. On May 9, 2017, West's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with Apollo.  Pursuant to the terms of the Merger Agreement, shareholders of West will receive $23.50 per share in cash.

3. On June 15, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of West common stock.

9. Defendant West is a Delaware corporation and maintains its headquarters at 11808 Miracle Hills Drive, Omaha, Nebraska 68154. West's common stock is traded on the NasdaqGS under the ticker symbol "WSTC."

10. Defendant Tom Barker ("Barker") has served as a director of West since 1997 and is Chairman of the Board and Chief Executive Officer ("CEO").

11. Defendant Lee Adrean ("Adrean") has served as a director of West since March 2014. According to the Company's website, Adrean is Chair of the Nominating and Governance Committee and a member of the Audit Committee.

12. Defendant Donald Casey Jr. ("Casey") has served as a director of West since 2015. According to the Company's website, Casey is a member of the Compensation Committee.

13. Defendant Anthony DiNovi ("DiNovi") has served as a director of West since 2006.

14. Defendant Paul Garcia ("Garcia") has served as a director of West since 2013. According to the Company's website, Garcia is Chair of the Compensation Committee and a member of the Nominating and Governance Committee.

15. Defendant Laura Grattan ("Grattan") has served as a director of West since October 2012.

16. Defendant Jeanette Horan ("Horan") has served as a director of West since April 2016. According to the Company's website, Horan is a member of the Audit Committee and the Compensation Committee.

17. Defendant Michael Huber ("Huber") has served as a director of West since January 2014.

3

18.     Defendant Diane Offereins ("Offereins") has served as a director of West since 2015. According to the Company's website, Offereins is a member of the Audit Committee and the Nominating and Governance Committee.

19.     Defendant Gregory Sloma ("Sloma") has served as a director of West since 2013. According to the Company's website, Sloma is Chair of the Audit Committee and a member of the Compensation Committee.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

22.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of West (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable. As of May 4, 2017, there were approximately 85,154,906 shares of West common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30. West is a global provider of communication and network infrastructure services.

31. The Company's portfolio of solutions includes unified communications services, safety services, interactive services such as automated notifications, specialized agent services, and telecom services.

32. West's clients include Fortune 1000 companies, along with small and medium enterprises in a variety of industries.

33. The Company has sales and/or operations in the United States, Canada, Europe, the Middle East, Asia-Pacific, Latin America, and South America.

34. On February 1, 2017, West issued a press release wherein it reported its fourth quarter and full year 2016 financial results. Among other things, for the fourth quarter, the Company reported that income from continuing operations increased 61.4 percent to $68.3 million, and adjusted income from continuing operations was $64.5 million, an increase of 1.4 percent. Safety Services revenue increased 3.9 percent, Interactive Services revenue increased 11.2 percent, and Specialized Agent Services revenue increased 3.1 percent in the fourth quarter. For the full year 2016, revenue was $2,292.0 million, an increase of 0.5 percent. During 2016, Safety Services revenue increased 5.3 percent, Interactive Services revenue increased 13.2 percent, and Specialized Agent Services revenue increased 1.6 percent. With respect to the results, Individual Defendant Barker commented:

> West Corporation finished the year with a fourth quarter that was stronger than we expected. . . [O]ur four growth businesses (UCaaS, Safety Services, Interactive Services and Specialized Agent Services) grew 5.5 percent on an organic basis in the fourth quarter. Additionally, we had double-digit growth in free cash flow in the fourth quarter and full year. During the fourth quarter we also made changes to our cost structure that we expect to positively impact our results in 2017 and further strengthen West for the future.

Additionally, the Company's Chief Financial Officer, Jan Madsen, commented:

> In 2016, West generated record operating cash flow. We deployed this cash toward repaying $191 million of our long-term debt, making two acquisitions for approximately $20 million and returning nearly $100 million to our shareholders in the form of dividends and stock repurchases[.] We also took steps to refinance our debt, ending the year with a more attractive maturity profile and decreased leverage ratio. We believe each of these steps is consistent with our focus on driving shareholder value and enhancing West's financial flexibility.

35. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate

6

consideration.

36. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

37. Further, the Company must promptly advise Apollo of any proposals or inquiries received from other parties.

38. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Apollo a "matching right" with respect to any "Superior Proposal" made to the Company.

39. Further locking up control of the Company in favor of Apollo, the Merger Agreement provides for a "termination fee" of $72 million payable by the Company to Apollo if the Individual Defendants cause the Company to terminate the Merger Agreement.

40. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

41. The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

42. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

44. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

45. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

46. First, the Proxy Statement omits material information regarding West's financial projections and the financial analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in support of its so-called fairness opinion.

47. With respect to West's financial projections, the Proxy Statement fails to disclose, *inter alia*: (i) taxes (or tax rate); (ii) capital expenditures; (iii) changes in net working capital; (iv) stock-based compensation expense; (v) EBITDA; (vi) interest expense; (vii) non-recurring items; (viii) depreciation and amortization; (ix) earnings; (x) net operating profit; and (xi) a reconciliation of all non-GAAP to GAAP metrics.

48. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions utilized by Centerview to derive the discount rate range of 8.5%-9.5%; (ii) the range of terminal values of West; (iii) Centerview's basis for applying perpetuity growth rates ranging from 1.0% to 2.0%; and (iv) the net debt of the Company as of March 31, 2017.

49. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) whether Centerview performed any benchmarking analysis for the

8

selected companies; and (ii) how the following statement influenced Centerview's opinion: "Centerview also observed that the Company consistently traded at a significant discount to the median of the enterprise value / estimated next twelve months Adjusted EBITDA multiple for the selected companies over the prior three years."

50. With respect to Centerview's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) whether Centerview performed any benchmarking analysis for the selected transactions; and (ii) the transaction values for the transactions utilized in the analysis.

51. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board"; (iii) "Reasons for Recommending the Adoption of the Merger Agreement"; (iv) "Forward-Looking Financial Information"; (v) "Opinion of Centerview Partners LLC"; and (vi) "Summary of Centerview Financial Analysis."

53. Second, the Proxy Statement fails to disclose whether any non-disclosure agreements executed by West and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

54. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

55. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board"; and (iii) "Reasons for Recommending the Adoption of the Merger Agreement."

56. Third, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

57. Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of West's officers and directors, including who participated in all such communications.

58. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

59. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board"; (iii) "Reasons for Recommending the Adoption of the Merger Agreement"; and (iv) "Interests of Directors and Executive Officers in the Merger."

60. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to West's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and West

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. West is liable as the issuer of these statements.

63. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

64. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

66. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

67. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

68. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Apollo

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants and Apollo acted as controlling persons of West within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of West and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71. Each of the Individual Defendants and Apollo was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were

thus directly involved in the making of the Proxy Statement.

73. Apollo also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

74. By virtue of the foregoing, the Individual Defendants and Apollo violated Section 20(a) of the 1934 Act.

75. As set forth above, the Individual Defendants and Apollo had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  June 26, 2017

**KINSEY ROWE BECKER & KISTLER, LLP**

By: _____
David W. Rowe – 19155
Robert D. Kinsey, Jr. - 12232
3800 VerMaas Place, Suite 100
Lincoln, NE 68502
(402) 438-1313

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800